___ LODGED
___ RECEIVED ___ COPY

APR 2 4 2006

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Isaac J. W. Mullins   ADC # 158541
Name and Prisoner/Booking Number

Arizona State Prison Complex - Florence
Place of Confinement

East Unit   P.O. Box 5000
Mailing Address

Florence, AZ   85232
City, State, Zip Code

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Isaac John William Mullins                    , )
(Full Name of Petitioner)                        )
                                                 )
                            Petitioner,          )
                                                 )
           vs.                                   )   CASE NO. CV06-1148-DHx-NVW(LOA)
                                                 )   (To be supplied by the Clerk)
Dora Schriro                                  , )
(Name of Warden, Superintendent, Jailor or       )
authorized person having custody of Petitioner)  )
                                                 )
                            Respondent,          )   PETITION FOR WRIT OF HABEAS CORPUS
                        and                      )   BY A PERSON IN STATE CUSTODY
THE ATTORNEY GENERAL OF THE STATE OF             )   PURSUANT TO 28 U.S.C. § 2254
                                                 )   (NON-DEATH PENALTY)
Arizona                                       , )
                            Additional Respondent. )
                                                 )

## A. JUDGMENT OF CONVICTION

1. Name and location of court which entered the judgment of conviction you are challenging: _____
   Superior Court of Arizona, Maricopa County
2. Case Number: No. CR 2000 - 003004
3. Date of judgment of conviction: 4 - 19 - 01 (month/day/year)
4. Length and terms of sentence(s): 21 yrs., 19 yrs., 3 yrs., all run consecutive
5. Nature of offense(s) of which you were convicted (all counts): Attempted 1st Degree Murder, Burlary in the 1st Degree, Theft of Means of Transportation
6. What was your plea?          ☑ Guilty        ☐ Not guilty      ☐ Nolo contendere
7. Kind of trial:               ☐ Jury          ☐ Judge only
8. Did you testify at the trial?  ☐ Yes          ☐ No

530

## B. APPEALS

1. Did you appeal the conviction or sentence?   ☐ Yes   ☑ No
   If you did appeal, answer the following:
   a. Name of court: _____
   b. Date the appeal was filed: _____ (month/day/year)
   c. Result: _____
   d. Date the appeal was decided: _____ (month/day/year)
   e. Date the mandate was issued: _____ (month/day/year)

2. Did you seek review of your appeal in the state supreme court?   ☐ Yes   ☐ No
   If you did file a petition for review, answer the following:
   a. Date the petition was filed: _____ (month/day/year)
   b. Result: _____
   c. Date the petition was decided: _____ (month/day/year)
   d. Date the mandate was issued: _____ (month/day/year)

## C. FIRST STATE POST-CONVICTION PROCEEDINGS

1. Did you file a petition for post-conviction relief in the state court?   ☑ Yes   ☐ No
   If you did file a petition for post-conviction relief, answer the following:
   a. Name of court: _Superior Court of Arizona_
   b. Date the notice of post-conviction relief was filed: __5-31-01__ (month/day/year)
   c. Date the petition was filed: __9-3-03__ (month/day/year)
   d. Result: _Denied by sentencing judge_
   e. Date the petition was decided: __1-7-04__ (month/day/year)

2. Did you seek review of your first petition in the court of appeals?   ☑ Yes   ☐ No
   If you did file a petition for review, answer the following:
   a. Date the petition was filed: __2-6-04__ (month/day/year)
   b. Result: _Denied_
   c. Date the petition was decided: __7-21-05__ (month/day/year)
   d. Date the mandate was issued: __"__ __"__ (month/day/year)

3. Did you seek review of your first petition in the state supreme court?   ☑ Yes   ☐ No
   If you did file a petition for review, answer the following:
   a. Date the petition was filed: __11-10-05__ (month/day/year)
   b. Result: _Denied_
   c. Date the petition was decided: __3-24-06__ (month/day/year)
   d. Date the mandate was issued: __"__ __"__ (month/day/year)

## D. SECOND STATE POST-CONVICTION PROCEEDINGS

1. Did you file a second petition for post-conviction relief in the state court? ☑ Yes   ☐ No
   If you did file a second petition for post-conviction relief, answer the following:
   a. Name of court: _Superior Court of Arizona_
   b. Date the notice of post-conviction relief was filed: _ __NA__ (month/day/year)
   c. Date the petition was filed: __9-3-04__ (month/day/year)
   d. Result: _Ordered to grant Petitioner Post-Conviction Relief in re Counts 1 and 2. (see Exhibit A)_
   e. Date the petition was decided: __12-23-04__ (month/day/year)

2

2.   Did you seek review of your second petition in the court of appeals?    ☑ Yes     ☐ No
     If you did file a petition for review, answer the following:          (see Exhibit B)
     a.    Date the petition was filed: ___2-2-05___ (month/day/year)
     b.    Result: _Court of Appeals reverses Superior Courts order to grant Post-Conviction Relief_
     c.    Date the petition was decided: __12-27-05__ (month/day/year)
     d.    Date the mandate was issued: ___"  "___ (month/day/year)
3.   Did you seek review of your second petition in the state supreme court?    ☑ Yes     ☐ No
     If you did file a petition for review, answer the following:
     a.    Date the petition was filed: ___2-21-06___ (month/day/year)
     b.    Result: _Pending_
     c.    Date the petition was decided: _____ (month/day/year)
     d.    Date the mandate was issued: _____ (month/day/year)

## E. OTHER STATE PROCEEDINGS

1.   Did you seek review of your conviction in any other state proceeding?    ☐ Yes     ☑ No
     If you did challenge your conviction in some other action, answer the following:
     a.    Nature of the action: _____ (e.g., special action, habeas corpus, etc.)
     b.    Name of court: _____
     c.    Date the action was filed: _____ (month/day/year)
     d.    Result: _____
     e.    Date the action was decided: _____ (month/day/year)
2.   Did you seek review of the other action in the court of appeals?    ☐ Yes     ☐ No
     If you did file a petition for review, answer the following:
     a.    Result: _____
     b.    Date the petition was decided: _____ (month/day/year)
3.   Did you seek review of the other action in the state supreme court?    ☐ Yes     ☐ No
     If you did file a petition for review, answer the following:
     a.    Result: _____
     b.    Date the petition was decided: _____ (month/day/year)

**Attach a copy of all state court written decisions regarding your conviction or sentence**

## F. FEDERAL PROCEEDINGS

Is this your first federal petition for writ of habeas corpus challenging this conviction?    ☑ Yes     ☐ No
If this is **not** your first federal petition challenging this conviction, answer the following:
1.   Name of court where the prior petition was filed: _____
2.   Date the petition was filed: _____ (month/day/year)
3.   Case number of the prior action: _____
4.   Date the action was decided: _____ (month/day/year)
5.   Did you raise any of the issues in this petition in your prior petition?    ☐ Yes     ☐ No
6.   Was the prior petition ☐ Granted, ☐ Denied on the merits, or ☐ Denied on procedural grounds?
7.   If the prior petition was denied, has the Ninth Circuit Court of Appeals granted permission to file this
successive petition?    ☐ Yes     ☐ No
      **Attach a copy of all Ninth Circuit Court of Appeals written decisions**

## G. PENDING PROCEEDINGS

Do you have any appeal, petition, application, motion or other action currently pending regarding the conviction you are challenging in this petition?  ☒ Yes    ☐ No

If you do have an action currently pending regarding your conviction, answer the following:
1. Nature of the action: _Rule 32 PC R_ (e.g., appeal, special action, habeas corpus, etc.)
2. Name of court where the action is pending: _Arizona Supreme Court_
3. Date the action was filed: _2-21-06_ (month/day/year)

## H. REPRESENTATION

Who was the attorney who represented you in the following state court proceedings?  Identify whether the attorney was appointed, retained, or whether you represented yourself pro se (without counsel).

|   | | Name of Attorney | Appointed | Retained | Pro Se |
|---|---|---|---|---|---|
| 1. | Preliminary hearing: | _Kenneth F. Huls_ | ☒ | ☐ | ☐ |
| 2. | Arraignment and plea: | _Jason M. Goldstein + Kenn M. Hanson_ | ☒ | ☐ | ☐ |
| 3. | Trial/guilty plea: | _J. Goldstein + K. Hanson_ | ☒ | ☐ | ☐ |
| 4. | Sentencing: | _Goldstein + Hanson_ | ☒ | ☐ | ☐ |
| 5. | Direct appeal: | _NA_ | ☐ | ☐ | ☐ |
| 6. | First post-conviction petition: | _Tennie B. Martin_ | ☒ | ☐ | ☐ |
| 7. | Second post-conviction petition: | _Consuelo M. Ohanesian_ | ☒ | ☐ | ☐ |

## I. OTHER SENTENCES

Do you have any other sentences to serve after you complete the sentence imposed by the judgment you are challenging in this petition?  ☐ Yes    ☒ No

If you do have other sentences to serve, answer the following:
1. Name of the court that imposed the other sentence: _____
2. Date of judgment of conviction: _____ (month/day/year)
3. Length and terms of sentence: _____
4. Have you filed or do you plan to file any petition attacking the judgment which imposed the sentence to be served in the future?  ☐ Yes    ☐ No

## CLAIMS FOR RELIEF

On the following pages, state concisely every ground for which you claim that your conviction or sentence violates the United States Constitution or other federal law.  Your claims should not be based on state law. Summarize briefly the facts supporting each ground.  If necessary, you may attach pages stating additional grounds and supporting facts.  **You must raise all grounds for relief that relate to this conviction.  Any grounds not raised in this petition will likely be barred from being raised in any subsequent federal action.**

## J. GROUND I

1.  My state conviction or sentence violates the following constitutional right or other federal law: _Petitioner received aggravated sentences in re Count 1 - Att. 1st Degree Murder and Count 2 - Burglary in the 1st Degree sans a jury finding him "guilty" of said aggravating factors, thus violating his Sixth Amendment right._

2.  **Supporting Facts:** (State as briefly as possible the FACTS supporting Ground I. State the facts clearly in your own words without citing cases or legal arguments).

    _Petitioner received an aggravated sentence of 21 yrs on count 1 and 19 yrs on count 2. The presumptive sentence for both counts was 10.5 yrs. The judge alone, without the benefit of a jury, decided to sentence Petitioner, a first time offender, to a max sentence of 21 yrs and aggravated sentence of 19 yrs. The petitioner at no time admitted to said aggravating factors used to enhance his sentence. While both mitigating and aggravating factors were presented to the judge at an aggravation / mitigation hearing the judge took it upon himself to impose aggravated sentences. The aggravating factors were never found to be true beyond a reasonable doubt_

3.  **Exhaustion of state court remedies:**
    a.  Did you present the issue raised in Ground I to the state supreme court?    ☑Yes   ☐ No
    b.  If you did present the issue to the state supreme court, was the issue presented:
        ☐ In a direct appeal
        ☐ In your first post-conviction relief proceeding
        ☑ In your second post-conviction relief proceeding
        ☐ Other: _____ (e.g., special action, habeas corpus, etc.)
    c.  If you did not present the issue to the state supreme court, explain why you did not:
        _____
        _____
        _____
        _____

## K.  GROUND II

1.   My state conviction or sentence violates the following constitutional right or other federal law: _Petitioner received ineffective assistance of counsel._

2.   **Supporting Facts:** (State as briefly as possible the FACTS supporting Ground II. State the facts clearly in your own words without citing cases or legal arguments).

Petitioner's counsel erred in his duty to represent petitioner to the best of his ability and failed to provide petitioner with sound advice. Petitioner, being less than a novice in regards to the legal system, relied upon counsel to provide him with sound advice. Petitioner's first attorney, Mr. K. Huls, denied the only plea bargain offered in this case without consulting with petitioner first. The plea which was denied by Mr. Huls and subsequently by petitioner, per Mr. Huls advice, was a favorable plea especially considering the outcome of this case. Mr. Huls and later Mr. Goldstein and Mr. Harian all assured petitioner that sans prior convictions etc. there was no way petitioner would receive a sentence longer than 15 yrs at most with all 3 charges run concurrent. It was with this assurance that petitioner agreed to proceed sans a plea offer and relinquish his right to a trial by jury. The petition received bad advice which resulted in ineffective assistance of counsel. The petitioner was not fully aware of the consequences associated with his plea of guilty. At no time was petitioner informed that a sentence of 21 yrs or more was even a remote possibility.

3.   **Exhaustion of state court remedies:**
   a.   Did you present the issue raised in Ground II to the state supreme court?   ☑Yes   ☐ No
   b.   If you did present the issue to the state supreme court, was the issue presented:
   ☐ In a direct appeal
   ☑ In your first post-conviction relief proceeding
   ☑ In your second post-conviction relief proceeding
   ☐ Other: _____ (e.g., special action, habeas corpus, etc.)
   c.   If you did not present the issue to the state supreme court, explain why you did not:
   _____
   _____
   _____
   _____
   _____

## L. GROUND III

1.   My state conviction or sentence violates the following constitutional right or other federal law: Count 1 and Count 2 should have been run concurrent but were instead run consecutive thus subjecting Petitioner to double jeopardy.

2.   **Supporting Facts:** (State as briefly as possible the FACTS supporting Ground III. State the facts clearly in your own words without citing cases or legal arguments).

The factual impossibility test proves that in this case Count 1 and Count 2 constitute a single act. The "ultimate" crime in this case was the alleged attempted murder. Sans the attempted murder charge the petitioner could not have been charged with Burglary in the 1st degree, a class 2 dangerous felony. The burglary was predicated on the alleged att. murder. The 2 charges should have been run concurrent to one another. To assume the court would have sentenced petitioner, a first time offender, to a 19 yr sentence sans the att. murder charge is unthinkable. The court clearly imposed an aggravated sentence on the burglary charge and run it consecutive to further punish petitioner for the attempted murder, thus double jeopardy.

3.   **Exhaustion of state court remedies:**
   a.   Did you present the issue raised in Ground III to the state supreme court?   ☑Yes   ☐ No
   b.   If you did present the issue to the state supreme court, was the issue presented:
      ☐ In a direct appeal
      ☐ In your first post-conviction relief proceeding
      ☑ In your second post-conviction relief proceeding
      ☐ Other: _____ (e.g., special action,  habeas corpus, etc.)
   c.   If you did not present the issue to the state supreme court, explain why you did not:

WHEREFORE, Petitioner prays that the court will grant Petitioner the relief to which he may be entitled in this proceeding.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on ___4-5-06_____          _Isaac Mullins_____
      DATE          SIGNATURE OF PETITIONER


_____NA_____
(Name and title of paralegal, legal assistant or
other person who helped prepare this petition)


_____NA_____
(Signature of attorney, if any)


_____
_____
_____
(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If needed, you may attach additional pages.  The form, however, must be completely filled in to the extent applicable.

EXHIBIT

A

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2000-003004                                     12/23/2004

                                     CLERK OF THE COURT
THE HONORABLE LOUIS ARANETA                 L. Mitchell
                                              Deputy

                                     FILED: 12/24/2004

STATE OF ARIZONA                     LINDA VAN BRAKEL

v.

ISAAC JOHN WILLIAMS MULLINS          CONSUELO M OHANESIAN

                                     APPEALS-PCR-SE
                                     COURT ADMIN-CRIMINAL-PCR
                                     VICTIM SERVICES DIV-CA-SE


MINUTE ENTRY


        The Court has considered the Defendant's Amended Petition for Post-Conviction Relief, the State's Response and the Reply thereto. Based on such consideration, the Court makes the following findings and Orders:

1.      Under Rule 32.1(g), Arizona Rules of Criminal Procedure, Defendant Isaac John Mullins claims "There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's …sentence." The change in the law is the decision in <u>Blakely v. Washington</u>, U.S. 124 S.Ct. 2531 (2004).

2.      Defendant contests:

        (a) That his plea was not voluntarily and intelligently made absent being advised of a right to jury determination of aggravating factors beyond a reasonable doubt as required by <u>Blakely</u>; and

        (b) that his aggravated sentences above the presumptive term of years were unconstitutional under <u>Blakely</u>. Defendant also claims ineffective assistance of counsel. Defendant's convictions or sentences are not final for Rule 32 purposes because the Court of Appeals granted a stay of Defendant's prior Petition for Review to allow Defendant to file his amended Petition for Post-Conviction Relief. Given the circumstances of Defendant's plea and sentencing,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2000-003004                                      12/23/2004

3.    The State responds that <u>Blakely</u> does not have the impact defined by Rule 32.1(g).  The State asserts those circumstances include Defendant's waiver of any right to jury determination of aggravating factors and application of the harmless error standard to this case.

4.    <u>Background</u>.  The State and Defendant did not enter a plea agreement.  Instead, on October 17, 2000, Defendant pled guilty to all charges without benefit of a plea agreement.  On April 19, 2001, this Court sentenced Defendant to the consecutive terms:

> (1)  21 years as the aggravated maximum term for Count 1, attempted first degree murder, a class 2 dangerous felony.

> (2)  19 years as an aggravated term for Count 2, burglary in the first degree, a class 2 dangerous felony; and

> (3)  3 years as a slightly mitigated term for Count 3, theft of means of transportation, a class 3 nondangerous felony.  The mitigated sentence in Count 3 is not affected by the decision in <u>Blakely</u>.

5.    On October 17, 2000 at the time Defendant entered his guilty plea and waived his right to a jury trial, Defendant's counsel provided the narrative factual basis for the elements of the charged crimes and the dangerous natures of the crimes in Counts 1 and 2.  In response to the Court's questions, Defendant waived his rights.  Defendant acknowledged his agreement to the narrative factual basis and confirmed his agreement to the factual elements of the crimes in response to the Court's questions.

6.    On April 19, 2001, the Court conducted the sentencing hearing to consider aggravating and mitigating factors under A.R.S.§702(C) and (D).  The Court considered the testimony of the victim Sarah Capp and Police Officer French, review of medical records, photographs, the aggravation and mitigation memoranda and arguments of counsel.  The Court found several aggravating factors and that there were at least two substantial aggravating factors that outweighed the mitigation factors for Counts 1 and 2.

7.    The <u>Blakely</u> decision holds that the Sixth Amendment prevents a trial court from imposing a sentence greater than the maximum permitted "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" unless a jury finds beyond a reasonable doubt other facts that support imposition of a greater sentence.124 S.Ct. at 2536-37.  In <u>State v. Brown</u>, __, Ariz. __, 99 P. 3d 15 (2004), the Arizona Supreme Court recently vacated the Court of Appeals ruling and held pursuant to <u>Blakely</u>, that the "maximum sentence" that may be imposed by a court absent admission by a defendant to or a jury finding of aggravating factors is the presumptive sentence.

8.    In the present case, this Court finds that the Defendant's agreement to the factual basis which satisfied the elements of the crimes and the dangerous nature of the crimes and the

Docket Code 019                    Form R000A                      Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2000-003004                                          12/23/2004

dangerous nature of the crimes is not the equivalent of an admission to the aggravating factors
needed for a sentence which exceeds the presumptive term.

9.      This Court also finds that the prior sentencing aggravating and mitigation hearing is not
equivalent to the required separate jury finding of those aggravating factors beyond a reasonable
doubt.  Applying the harmless error standard recognized in <u>State v. Mardaugh</u>, 209 Ariz. 19, 97
P.3d 844 (2004), this Court cannot find that no reasonable jury would have failed to find the
aggravating factors.  That is because:

   (1)  This Court applied a standard of proof which was less than beyond a reasonable
        doubt as required of a jury; and

   (2)  The admission of various documents including presentence reports was not subject to
        evidentiary safeguards regarding hearsay or foundational requirements; and

   (3)  In the context of presenting information to the Court under §13-702 Defendant
        through counsel likely relied on sentencing memoranda in lieu of additional evidence.
        For example, Defendant argued that certain aggravating factors were inherent in
        attempted first degree murder.

10.     The Court finds that Defendant properly waived his right to a jury determination of the
elements of the crimes and the dangerous nature of the crimes in Counts 1 and 2.  That waiver
did not include the subsequently granted right to a jury determination of aggravating factors
beyond a reasonable doubt.

11.     The Court finds that prior defense counsel was not ineffective for failing to inform
Defendant of a right that did not exist at the time in 2000.

12.     However, the circumstances of this sentencing are governed by the <u>Blakely</u> decision as a
significant change in the law which would modify Defendant's sentences as to Counts 1 and 2
only.  Here, <u>Blakely</u> requires a jury to determine beyond a reasonable doubt the existence of at
least two substantial aggravating factors which outweigh any mitigating factors in order for the
defendant to receive a sentence above the presumptive term of 10.5 years individually for Counts
1 and 2.

13.     Based upon the above, Defendant is entitled to relief from the sentences in Counts
1 and 2.

14.     Although Defendant has not presented a colorable claim for relief to vacate the guilty
pleas in Counts 1 and 2, Defendant is entitled to a jury determination of any aggravating factors
for sentencing.  Therefore,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2000-003004                                          12/23/2004

**IT IS ORDERED** granting the Petition for Post-Conviction Relief only as to sentences received for Counts 1 and 2 only.

**IT IS FURTHER ORDERED** denying the Petition as to Count 3.

**IT IS FURTHER ORDERED** that a new sentencing hearing be set for Counts 1 and 2. The Court schedules a **Telephonic Status Conference** for **January 12, 2005 at 1:15 p.m.** with both counsel.  At a minimum, the status conference will address the positions of the State, Defendant and victims Sarah Capp and her parents and the setting of the resentencing hearing before this Court or another judge.  By agreement, the presence of the defendant may be waived or the defendant may appear telephonically for the status conference.  Counsel for Defendant shall notify the Court regarding the defendant's presence if needed so that the Court can enter the appropriate order to the Department of Corrections.

EXHIBIT

B

DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA
FILED
DEC 2 7 2005
PHILIP G. URRY, CLERK
By_____

**IN THE COURT OF APPEALS**
**STATE OF ARIZONA**
**DIVISION ONE**

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, | ) | 1 CA-CR 04-1051 PRPC |
|  | ) |  |
| Petitioner, | ) | DEPARTMENT D |
|  | ) |  |
| v. | ) |  |
|  | ) | **MEMORANDUM DECISION** |
| ISAAC JOHN WILLIAMS MULLINS, | ) | (Not for Publication – |
|  | ) | Rule 111, Rules of the |
| Respondent. | ) | Arizona Supreme Court) |
|  | ) |  |

Appeal from the Superior Court in Maricopa County

Cause No. CR 2000-003004

The Honorable Louis A. Araneta, Judge

**REVERSED**

---

Andrew P. Thomas, Maricopa County Attorney                     Phoenix
    By   Linda Van Brakel, Deputy County Attorney
Attorneys for Petitioner

Susan Sherwin, Legal Advocate                                  Phoenix
    By   Consuelo M. Ohanesian, Deputy Legal Advocate
Attorneys for Respondent

---

**B A R K E R**, Judge

¶1      This is a petition to review post-conviction relief that the trial court granted based on the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). The trial court granted relief at a time when the resolution of several key *Blakely* issues were subject to differing interpretations under Arizona law. Those issues have since been clarified in *State v. Martinez*, 210 Ariz. 578, ___, ¶ 26, 15 P.3d 618, 625 (2005), and

*State v. Henderson*, 210 Ariz. 561, \_\_\_, ¶ 17, 115 P.3d 601, 607 (2005). Applying those holdings, we reverse the grant of post-conviction relief and reinstate petitioner's original sentence.

## Facts and Procedural History

¶2      Isaac John Williams Mullins ("Mullins") began dating the victim, Sara, in October of 1997 while both were residents of Arizona. Approximately one year later, Mullins moved to Idaho with his father. In September of 1999, while Mullins was living in Idaho, Sara attempted to terminate their relationship. At this point, Sara told Mullins she did not want to see him anymore and that she had met someone else.

¶3      In October of 1999 Mullins went to Phoenix to try to reconcile with Sara. He remained in Phoenix for two months but never reconciled with her.

¶4      According to Mullins' videotaped confession, he returned to Phoenix again on February 9, 2000 with a plan to murder Sara. He brought a ski mask, duct tape, gloves, and a nylon rope with him from Idaho. In Arizona, he bought a nylon mask and some spray paint so he could make the murder look like a gang-related killing. Mullins brought his supplies with him and had a taxicab take him to Sara's residence early the morning of February 10, 2000. He waited outside until Sara and her parents had left for the morning. Then he entered the residence through the rear door that he knew was usually unlocked.

2

¶5      Mullins waited at the house until Sara got home.  While waiting, he got a knife from the kitchen and a hammer from the garage to use in case the parents came home.  Mullins wanted to remove the telephones to prevent Sara from calling for help but he was unable to because Sara arrived home earlier than he expected.

¶6      When Sara got home, she undressed into her undergarments and went into the bathroom.  When she came out, Mullins (wearing a mask and gloves) grabbed her from behind.  According to Sara, Mullins grabbed her neck and forced her to the floor.  Sara was able to get the knife out of Mullins' back pocket and tried to use it to ward him off, but Mullins was able to retrieve it from her.  Mullins stated that he was trying to break Sara's neck, but the blood from the struggle was preventing him from getting a grip because he was wearing "stupid gloves."

¶7      According to Sara and Mullins, she was able to get the mask off and see that it was Mullins who was attacking her.  During the struggle, they ended up in the guest bedroom.  Mullins retrieved the hammer from the dresser in the guest bedroom and began to hit Sara in the head with it.  According to Sara, Mullins used the hammer as if he was "putting a nail through [her] head."  Sara begged for her life as Mullins attacked her.  Mullins told police that he wanted to knock Sara out so he did not have to listen to her anymore.  Once he was able to knock her out, Mullins said he retrieved the knife and, using his body weight, stabbed

3

Sara in the chest.   He covered her with a comforter and then changed his clothes and washed himself.

¶8      Miraculously, Sara regained consciousness. She testified Mullins asked her if she would like him to call the police and she said yes.  Mullins took the cordless telephone from Sara's bedroom and took the keys to the car parked in the garage.   He left the residence in the car.   Sara was able to drag herself to her parent's room but found that Mullins had removed the phone.   She managed to walk down the stairs and use the telephone in the kitchen to call the police.

¶9      The police responded to the call from the residence and found Sara lying motionless on the floor in a large pool of blood. According to Mullins, he went back to the motel, cleaned up again and checked out.   He then went to the mall, called 911 from the mall and informed them that "someone was dying" at Sara's address. He then called Sara's boyfriend and informed him that he had just killed Sara.   Mullins was taken into custody on February 12, 2000.

¶10      Sara survived the attack, but had to be hospitalized for several days.   She had a tube in her chest and has a scar under her left breast, where Mullins stabbed her.   She underwent cosmetic surgery, but still has a scar on her jaw.   She also has bare spots in her hair where her hair will not grow back.   Sara testified that her family relocated after she finished high school because of the attack and she was unable to attend college when planned because of

the trauma the attack caused her.

¶11      On February 22, 2000, Mullins was charged with one count of attempted first-degree murder, one count of first-degree burglary, and one count of automobile theft.  On October 17, 2000, Mullins, without entering into a plea agreement, pled guilty to the formal charges of his indictment.[1]  Prior to accepting Mullins'

---

[1]      Mullins' attorney set forth the following factual basis for the plea, to which Mullins agreed:

> That on or about February 9 of the year 2000, Mr. Mullins flew in from the state of Idaho where he had resided, to Phoenix, Arizona.  On the next day, February 10th of the year 2000 at approximately 6:00 o'clock a.m. Mr. Mullins went to the victim's house located at 11406 West Crimson Lane in Avondale, Maricopa County, and surveilled the house waiting for the occupants to leave, which they did.  Once everyone had left the residence, Mr. Mullins proceeded through the side gate into the backyard and entered the house through the back sliding glass door, which he knew was always open.  Before that time Mr. Mullins had put on surgical gloves which he had procured in Idaho.  He also brought with him a backpack [which] contained [a] ski mask, . . . pantyhose, mask, nylon cord and duct tape.

> Mr. Mullins proceeded to walk through the house, at which time he took from the kitchen a knife and from the garage a hammer.  At approximately 2:00 o'clock in the afternoon, Mr. Mullins hears the victim enter the house, he dons his mask and hides in an upstairs bedroom and then physically attacks and assaults the victim with a knife and then a hammer.  His mask is removed by the victim and she identifies him as Isaac Mullins, her prior boyfriend.  At that time, Mr. Mullins leaves the residence, exiting through the garage.  He takes the keys from a hutch to a 94 Chevrolet

5

plea, the trial court informed him that he could spend up to fifty and three-fourths years in prison.

¶12    On April 19, 2001, the trial court sentenced Mullins to twenty-one years in prison for count one, nineteen years in prison for count two, and three years in prison for count three. The trial court ordered the sentences for counts one, two, and three to run consecutively. As to counts one and two, the court found a number of aggravating factors. Those sentences were aggravated, but not "superaggravated," and thus required only one and not two aggravating factors.[2]  *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-604(I)

---

> Camaro automobile without the permission of the owner, takes that car and leaves the residence.

The state added the following:

> [I]n the Defendant's own statement, he indicated that he had come to Arizona with the purpose in mind of killing the victim, [Sara]. That he stabbed her at least twice, once seriously in the chest. He also hit her repeatedly in the head with a hammer. She was seriously injured as a result of his use of this, the deadly weapon, the knife and the hammer, and she ended up being hospitalized for several days, having to have chest tubes, cosmetic surgery and so forth, and that the owner of the car that the Defendant stole when he left was [Sara's] father Douglas . . . [who] had not given the Defendant permission to take the car.

Mullins agreed with these statements except that he claimed to have stabbed her only once.

[2]    The trial court's comments at sentencing, indicating the need for two substantial aggravating factors, are not accurate as

(Supp. 2005) and 13-702(B) (Supp. 2005).    Count three was a
mitigated sentence.

**¶13**    .    As to count one, the court found, pursuant to A.R.S.
§ 13-702(C), that the following aggravating circumstances existed
in the crime: 1) pursuant to subsection 1, that Mullins inflicted
upon Sara serious physical injury; 2) pursuant to subsection 5,
that the crime was committed in an especially heinous, cruel, and
depraved manner; 3) pursuant to subsection 9, that the crime caused
physical, emotional, and financial harm to Sara; 4) pursuant to
subsection 16, that Mullins did lie in wait for the victim during
the commission of a felony; and 5) pursuant to subsection 18, the
catchall provision, that it was in the interest of justice that the
sentence be aggravated.

**¶14**      As to count two, the trial court found the following
aggravating factors: 1) that Mullins "engaged in extensive planning
and preplanning for burglary in the first degree"; 2) that Mullins
"remained in the house for a substantially long period of time
without the permission of the homeowner"; 3) that Mullins

---

to the counts at issue.    Sentencing based on two substantial
aggravating factors is invoked by A.R.S. § 13-702.01 (Supp. 2005).
In this case, as to counts one and two, the sentencing was based on
a dangerous offense as specified in A.R.S. § 13-604(I) and (P)
(Supp. 2005).    The presumptive for a dangerous class two felony is
ten and one-half years, the maximum is twenty-one years and the
minimum is seven years.    A.R.S. § 13-604(I).    The aggravated term,
as was given here as to counts one and two, was implemented
pursuant to A.R.S. § 13-702(B) and (C) (Supp. 2005).    Section 13-
702(B) provides for an aggravated term "if one or more of the
circumstances alleged to be in aggravation" is found.

"attempted to prevent [Sara] from being able to call for help by herself by removing the upstairs phones"; and 4) that Mullins "carried out the burglary by washing [himself], changing out of [his] bloody clothes, in order to try to prevent attention being drawn to [him] so [he] would not be suspected of having committed a burglary."

¶15    Finally, as to count three, the court found that "mitigating factors do slightly outweigh the aggravating factors." Therefore, the court gave Mullins a slightly mitigated term.[3]

¶16    On May 31, 2001, Mullins filed a notice of post-conviction relief. On September 3, 2003 he filed a petition for post-conviction relief. On January 7, 2004, the court dismissed Mullins' petition. On February 9, 2004, Mullins filed a petition for review of the dismissal. While this petition was pending, *Blakely*, 542 U.S. 296, was decided by the United States Supreme Court. We remanded the case to the trial court for supplementary proceedings. Mullins filed an amended petition for post-conviction relief based on *Blakely*. In his petition, Mullins raised three issues: 1) that his plea had not been "voluntarily and intelligently made because he was not told that he had a right to

---

[3]    . The only aggravating factor that the court found was that Mullins took the car from the owner's residence. It should also be noted that the court weighed the same mitigating factors for all three counts. These were Mullins' young age, the fact that he had no prior felonies, and that he had a personality disorder and a major depressive disorder.

have a jury determine the truth of any aggravators alleged by the
State, that any such aggravating facts must be found beyond a
reasonable doubt, and that he had waived these rights by pleading
guilty"; 2) "that his sentence was unconstitutional because the
court based its decision using facts that were neither admitted by
the Defendant, nor found by a jury, thus violating the Defendant's
Sixth Amendment right to trial by jury as interpreted in *Blakely v.
Washington*"; and 3) "that Defendant's appointed counsel
ineffectively represented him."

¶17    On December 24, 2004, the trial court granted relief.  In
relevant part, the court found that "Defendant acknowledged his
agreement to the narrative factual basis and confirmed his
agreement to the factual elements of the crimes in response to the
Court's questions."    However, the court also found that "the
Defendant's agreement to the factual basis which satisfied the
elements of the crimes and the dangerous nature of the crimes . . .
is not the equivalent of an admission to the aggravating factors."
It further found that the issue had not been waived.   It also
applied a harmless error standard and determined that the error
here was not harmless.

¶18    Based on the foregoing, the trial court found Mullins was
entitled to a jury determination of the aggravating factors for
sentencing for counts one and two.   Accordingly, it vacated those
sentences and ordered a new sentencing hearing for counts one and

two.  The state then filed this petition for review asking us to vacate the trial court's grant of post-conviction relief.

### Discussion

¶19      We review the grant or denial of post-conviction relief for abuse of discretion.  *State v. Jenkins*, 193 Ariz. 115, 118, ¶ 5, 970 P.2d 947, 950 (App. 1998).  A court abuses its discretion if the reasons given for its action are legally incorrect.  *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).

¶20      The state claims that the trial court erred because  (1) the requirements of *Blakely*[4] were waived due to the guilty plea, (2) *Blakely* was satisfied because the aggravators were based on admissions, and/or (3) even if there was *Blakely* error, it did not rise to such a level as to entitle Mullins to relief.  We need only address the third issue.  Based on *Henderson* and *Martinez*, we agree that the trial court erred on that ground, and the grant of post-conviction relief must be vacated.

¶21      Under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and *Blakely*, 542 U.S. at 313, a judge may not impose more than the maximum statutory sentence (in Arizona, the "presumptive" sentence)

---

[4]      *Blakely* applies in this case since it applies to "all convictions not yet final on direct review the day *Blakely* was decided, even if the defendant was sentenced before the decision."  *State v. Ward*, 211 Ariz. 158, ___, ¶ 10, 118 P.3d 1122, 1126 (App. 2005) (citations omitted).

absent jury findings or admissions on an aggravating factor other than the fact of a prior conviction. In *Henderson*, the Arizona Supreme Court made it clear that so-called *Blakely* error "does not constitute structural error and may be reviewed using a trial error analysis." *Henderson*, 210 Ariz. at ___, ¶ 17, 115 P.3d at 607. *Henderson* held that the applicable standard for trial error would be "the harmless error standard when a defendant objects at trial and thereby preserves an issue for appeal." *Id.* at ¶ 18. "Fundamental error review, in contrast, applies when a defendant fails to object to alleged trial error." *Id.* at ¶¶ 19-22.

¶22     In this case, there was no objection in the trial court to sentencing by means of judicial fact-finding. Thus, fundamental error analysis applies. In the trial court's minute entry granting relief, however, it expressly noted that it was applying the *harmless error* standard found in *State v. Murdaugh*, 209 Ariz. 19, 97 P.3d 844 (2004). While this is understandable, given the uncertainty of the law at the time, we now know it was error. It was also outcome determinative on the facts here.

¶23     "To establish fundamental error, [a defendant] must show that the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Henderson*, 210 *Ariz.* at ___, ¶ 24, 115 P.3d at 608. Stated differently, the defendant has the burden, in fundamental error

11

analysis, to show "that the error caused him prejudice." *Id.* at ¶ 26. On this record, Mullins is unable to make that showing.

**¶24**      To satisfy *Blakely*, the state need only point to one aggravator utilized by the trial court for which the defendant cannot meet its burden of showing prejudice. *Martinez*, 210 Ariz. at ___, ¶ 26, 15 P.3d at 625 ("[O]nce a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the [statutory] maximum.").

**¶25**      As to count one, the attempted first-degree murder count, one of the aggravators upon which the trial court relied was that Mullins was lying in wait for Sara. On the record before us, it is clear that Mullins cannot meet his burden of showing prejudice. The trial court expressly found that defendant "acknowledged his agreement to the narrative factual basis."[5]  In that narrative, defendant acknowledged that he arrived at the victim's home at 6:00 a.m.  He watched the parties leave the home and then entered through the back of the home. After taking other steps to prepare for his crimes, Mullins waited for Sara to come home. As Mullins stated in his videotaped confession, he hid when he heard Sara enter the home.  After Sara changed into her undergarments and exited the bathroom, Mullins, masked and gloved, attacked her.

---

[5]      The only exception to this is that Mullins disputed that he stabbed the victim twice.  He said he only stabbed her once.

12

From Mullins' statements, it was clear that he prepared and waited in hiding at the home for at least four hours prior to committing the crimes. Mullins has shown no prejudice from any *Blakely* error; no reasonable jury could conclude that Mullins did not lay in wait to attack Sara. *See Henderson*, 210 Ariz. at ___, ¶ 27, 115 P.3d at 609.

¶26 As to count two, first-degree burglary, the trial court found as an aggravator that Mullins "engaged in extensive planning and preplanning." As with the aggravator referenced above, no reasonable jury could have concluded otherwise. As the trial court noted, Mullins "equipped [himself] with gloves so as to not leave fingerprints which was [confirmed] by [Mullins'] statement to the police. [Mullins] used two types of masks, a nylon and a ski mask." In the narrative statement set forth by counsel, Mullins agreed that before entering the house he "had put on surgical gloves which he had procured in Idaho. He also brought with him a backpack [which] contained [a] ski mask, . . . pantyhose, mask, nylon cord and duct tape."

¶27 As the earlier factual recitation indicates, *supra* ¶¶ 2-11, we do not suggest that Mullins has met his burden of showing prejudice as to any of the aggravators. The law simply does not require that we address each aggravator. *See Martinez*, 210 Ariz. at ___, ¶ 26, 15 P.3d at 625. Applying the correct standard of review, as set forth in *Henderson*, and the principle from *Martinez*

that only one aggravator must be *Blakely*-compliant to authorize a trial judge to sentence within the aggravated range, it is clear that the grant of post-conviction relief was in error.

### Conclusion

¶28     For the foregoing reasons, we find the trial court abused its discretion when it granted Mullins a new sentencing hearing. Accordingly, we reverse the grant of post-conviction relief and reinstate Mullins' original sentence.

_____
DANIEL A. BARKER, Judge

CONCURRING:

_____
ANN A. SCOTT TIMMER, Presiding Judge

_____
SHELDON H. WEISBERG, Judge

14