WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Isaac J.W. Mullins, | ) | No. CV-06-01148-PHX-NVW |
| | ) | |
| Petitioner, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Dora B. Schriro, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Pending before the court is the Report and Recommendation ("R&R") of Magistrate Judge Lawrence O. Anderson (Doc. # 25) regarding Petitioner Mullins's Amended Petition for Writ of Habeas Corpus by a Person in State Custody filed pursuant to 28 U.S.C. § 2254 (Doc. # 9).

**I. Background**

This petition results from the conviction and sentence of Petitioner to forty-three years in prison. On February 10, 2000, Petitioner broke into the home of his ex-girlfriend's parents, armed himself with a hammer and knife, attacked and almost killed his ex-girlfriend with those instruments, and then stole the family's car.

**A. The Plea, Conviction, and Sentence**

The State of Arizona Charged Petitioner with attempted first-degree murder, first-degree burglary, and car theft. On October 17, 2000, Petitioner pleaded guilty to all of those charges without a plea agreement. The trial court advised Petitioner of the possible

sentences on all three counts and that those sentences could be ordered to run consecutively for a total of 50.75 years' imprisonment. Petitioner told the court that he understood that his sentences could run consecutively for up to 50.75 years and affirmed that he wanted to plead guilty to all three offenses as charged.

The prosecutor also informed the court that a prior prosecutor had offered Petitioner a plea agreement and that the Petitioner had rejected it. The court engaged in the following colloquy regarding the prior plea offer:

| | |
|---|---|
| Ms. Gallagher: | I want the record to be clear. I have had this problem in the past, that in this case there was a plea agreement made some time ago to the Defendant by a different prosecutor. The Defendant turned down the plea. He got new counsel. They asked for the plea back. By then the case was assigned to me. While Mr. Hanson asked me for it back, I refused. There is no plea. There will never be a plea in this case. Just so the record is clear, that Mr. Hanson did in fact, ask, Mr. Mullins had already turned it down and, I am not going to give it back. |
| The Court: | All right. You took over the case as the subsequent prosecutor, correct? |
| Ms. Gallagher: | Yes, your honor. |
| The Court: | Did you, Mr. Hanson, take over the case as defense counsel from someone else or have you been the defense attorney throughout? |
| Mr. Hanson: | I am also subsequent defense counsel. |
| The Court: | Was it a different prosecutor and different defense attorney when the prior plea offer was made? |
| Ms. Gallagher: | Yes, your honor. |
| The Court: | Okay. Do you understand that, Mr. Mullins? |
| The Defendant: | Yes. |
| The Court: | Ms. Gallagher says when you were previously represented by a different defense attorney you had been presented an offer by the State and after receiving advice from your prior defense attorney, you chose to reject that plea offer; is that correct? |
| The Defendant: | Yes, that's correct. |
| The Court: | Ultimately, the decision to accept or reject the plea offer rests with you, the Defendant; do you understand that? |
| The Defendant: | Yes. |

1       The Court:     [Is that w]hat you did?

2       The Defendant:  Yes.

3       Petitioner's defense counsel then offered the following factual basis for all three

4 charged offenses:

> In the event this matter had proceeded to trial, a summary of the evidence that would have been brought against Mr. Mullins is as follows: That on or about February 9 of the year 2000, Mr. Mullins flew in from the state of Idaho, where he resided, to Phoenix, Arizona. On the next day, February 10th of the year 2000 at approximately 6 o'clock a.m. Mr. Mullins went to the victim's house . . . , and surveilled the house waiting for the occupants to leave, which they did. Once everyone had left the residence, Mr. Mullins proceeded through the side gate into the backyard and entered the house through the back sliding glass door, which he knew was always open. Before that time, Mr. Mullins put on surgical gloves which he had procured in Idaho. He also brought with him a backpack [that contained a] ski mask, pantyhose mask, nylon cord, and duct tape. Mr. Mullins proceeded to walk through the house, at which time he took from the kitchen a knife and from the garage a hammer. At approximately 2 o'clock in the afternoon, Mr.Mullins hears the victim enter the house, he dons his mask and hides in an upstairs bedroom and then physically attacks and assaults the victim with a knife and then a hammer. His mask is removed by the victim and she identifies him as Isaac Mullins, her prior boyfriend. At that time, Mr. Mullins leaves the residence, exiting through the garage. He takes the keys . . .to a '94 Chevrolet Camaro automobile without the permission of the owner, takes that car and leaves the residence.

16 The State supplemented the statement of facts with these details:

> Your honor, I would add that in the Defendant's own statement he indicated that he had come to Arizona with the purpose in mind of killing the victim, Sara Capp, that he stabbed her twice, once seriously in the chest. He also hit her repeatedly in the head with a hammer. She was seriously injured as a result of this, the deadly weapon, the knife and the hammer, and she ended up being hospitalized for several days, having to have chest tubes, cosmetic surgery, and so forth, and that the owner of the car that the Defendant stole when he left was Sara Capp's father's, Douglas Capp. Mr. Capp had not given the Defendant permission to take the car.

22 The court found a factual basis for the charges and accepted the pleas.

23       On April 19, 2001, the court imposed an aggravated 21-year sentence for the first-

24 degree murder conviction and an aggravated 19-year sentence for the first-degree

25 burglary conviction.  It found that Petitioner committed the two crimes separately because

26 he had armed himself with the knife and hammer intending not to use them on his ex-

27 girlfriend, but rather on her parents if they came home first.  The court therefore ordered

28

that Petitioner serve the sentences consecutively.  The court also imposed a consecutive three-year term of imprisonment for theft of the car.

### B. Rule 32 Of-right Proceedings

By pleading guilty, Petitioner waived his right to a direct appeal under Arizona law.  However, he retained his right to seek review in an "of-right proceeding" under Arizona Rule of Criminal Procedure 32.  Accordingly, on May 31, 2001, Petitioner filed a notice of post-conviction relief under Ariz. R. Crim. P. 32.  He asserted that the State court's imposition of consecutive sentences for attempted first-degree murder and first-degree burglary violated A.R.S. § 13-116.  He also asserted that he had received ineffective assistance from his original defense lawyer, Mr. Kenneth Huls, because 1) Mr. Huls "rejected a favorable plea without even informing him first"; and 2) "at no time, did Mr. Huls inform [Petitioner] or his father that he faced in excess of 43 years in prison." (Answer Ex. O at 7–8.)  Petitioner supported this claim with an affidavit from his father and his own affidavit.

The court rejected both of Petitioner's challenges.  In rejecting his claim of ineffective assistance of counsel, the court explained as follows:

> In contradiction to his acknowledgment in court that his prior attorney had presented the State's plea offer to him, advised him regarding the plea offer, and that he had chosen to reject it [reporter's transcript of 10/17/2000 at Pages 14-15], Defendant now claims in his affidavit that it was his attorney and not he who rejected the plea offer. Noticeably absent is any affidavit by his former counsel, Ken Huls. The Defendant's affidavit is contradicted by his statement in court. He has presented no objective evidence to support a colorable claim of ineffective assistance.

Petitioner then sought review of the trial court's denial of his Rule 32 proceeding in the Arizona Court of Appeals.  He again asserted ineffective assistance from Mr. Hulls because "not only did [Mr. Hulls] not inform him of the terms of the plea offer before it had expired and reject the offer without informing him but counsel also failed to inform him as to what sentencing ranges he faced if convicted at trial . . . .  At no time, did Mr. Hulls inform him or his father that he faced in excess of 43 years in prison." (Answer Ex. R at 14.)  He also again raised his challenge to the consecutive sentences.  On a

- 4 -

1  subsequent remand of his petition he challenged the voluntariness of his pleas, the
2  imposition of aggravated sentences, and the effectiveness of his trial counsel.
3      The Court of Appeals and the Arizona Supreme Court ultimately denied review of
4  all of Petitioner's claims.

### C. The Report and Recommendation

6      In his petition for habeas corpus, Petitioner alleges that his state conviction
7  violates 1) his Sixth Amendment right to a trial by jury; 2) his Fifth, Sixth, and Fourteenth
8  Amendment rights to counsel; 3) the Double Jeopardy Clause of the Fifth Amendment; 4)
9  his Fifth Amendment right to be tried only for those offenses presented in the indictment;
10 and 5) his Sixth Amendment right to notice.  To support his claim of ineffective
11 assistance of counsel, he contends that he "has a Sixth Amendment right to be adequately
12 informed of the consequences before deciding whether to accept or reject the offer,
13 furthermore, defense counsel has a duty to communicate not only the terms of a plea
14 bargain, but also the relative merits of the offer compared to Petitioner's chances at trial."
15 (Doc. #9 at 6.)  The factual support for his claim does not specifically state that Mr. Huls
16 failed to inform Petitioner of the possible sentence he faced if he rejected the plea offer
17 and went to trial.
18     In defining Petitioner's claim of ineffective assistance of counsel, the R&R lists as
19 "Claim 2" that "Trial counsel rendered ineffective assistance because: (a) Kenneth Huls
20 failed to communicate to Petitioner the State's plea offer of a stipulated 21-year sentence
21 before the offer expired; and (b) counsel Kenn Hansen and Jason Goldstein incorrectly
22 informed Petitioner that there was "no way" he would be sentenced to a prison term
23 greater than 15 years and receive consecutive sentences."  (R&R at 12.)  It does not
24 mention Petitioner's claim that Mr. Huls failed to inform him of the sentencing range he
25 faced if he rejected the plea offer and was convicted at trial.
26     The R&R recommends dismissing Petitioner's claim that he received ineffective
27 assistance from Mr. Huls because the State court concluded that Petitioner's change-of-
28 plea statements were more believable than his post-conviction assertions.  The Magistrate

- 5 -

1 Judge observes that the state court made a fact finding that Petitioner had reviewed the
2 former plea offer with Mr. Huls and chose to reject it.  The R&R therefore recommends
3 that this court defer to the state court's "conclusion that trial counsel did not render
4 ineffective assistance in failing to communicate a plea offer to Petitioner," find that
5 "counsel Ken Huls did convey the State's plea offer to Petitioner and Petitioner chose to
6 reject the offer," and hold that "a claim of ineffective assistance premised upon counsel's
7 failure to communicate the plea offer to Petitioner cannot prevail."  It makes no
8 recommendation on the claim that Mr. Huls did not inform Petitioner of the possible
9 sentence he faced at trial before he rejected the plea offer.  (R&R at 33–34.)

The R&R also makes the following recommendations:

1) Dismiss the following claims because they have been procedurally defaulted and Petitioner cannot show "cause and prejudice":

  A) Counsel Kenn Hansen and Jason Goldstein provided Petitioner with ineffective assistance because they incorrectly informed him that there was "no way" he would be sentenced to a prison term greater than 15 years and receive consecutive sentences;

  B) The imposition of consecutive sentences violates the Double Jeopardy Clause;

  C) The imposition of consecutive sentences violates Petitioner's right to a grand jury indictment;

  D) The Arizona Court of Appeals was biased against Petitioner because it reversed the trial court's order granting post-conviction relief.

2) Dismiss the following claims because the State court's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court at the time of the state court's decision:

  A) The imposition of aggravated sentences violates Petitioner's Sixth Amendment jury trial guarantee;

  B) The imposition of consecutive sentences violates Petitioner's Sixth Amendment right to notice.

Petitioner objects to the R&R because it does not address his claim that Mr. Huls failed to inform him of the potential sentence he faced if he rejected the plea offer and went to trial.  He also objects to the Magistrate Judge's conclusions that 1) he procedurally defaulted his Double Jeopardy Clause claim and his claim of ineffective

- 6 -

1 assistance from Mr. Hansen and Mr. Goldstein; and 2) the imposition of consecutive
2 sentences does not violate Petitioner's Sixth Amendment right to notice.

## II. Analysis

The court has considered the objections and reviewed the R&R de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (stating that the court must make a de novo determination of those portions of the R&R to which specific objections are made). As to all those issues that the R&R does address, the court agrees with the Magistrate Judge's determinations, accepts the recommended decision within the meaning of Rule 72(b), Fed. R. Civ. P., and overrules Petitioner's objections. *See* 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate").

The court has not received a recommendation on Petitioner's claim that he did not know the potential sentence he faced at trial when the plea offer was rejected. The R&R recommends that the court defer to the State court's fact finding that Mr. Huls did convey the plea offer to Petitioner and that Petitioner rejected it. That conclusion does not address Petitioner's claim that even if he did reject the plea himself, he did so without knowing the potential sentence he faced at trial. Petitioner's habeas petition does not present that argument clearly, so the Magistrate Judge cannot be faulted for excluding it from the R&R. Nevertheless, Petitioner did exhaust the claim before the state courts. He also stated in his habeas petition that the Sixth Amendment provides him with a right to be adequately informed of the consequences and relative merits of accepting or rejecting a plea offer. Bearing judicial economy in mind, it is prudent for this court to remand the petition to the Magistrate Judge for a further report and recommendation on Petitioner's claim that Mr. Huls provided ineffective assistance by failing to inform him of the potential sentence he faced at trial if he rejected the plea offer.

Insofar as the Magistrate Judge also ruled on any non-dispositive matters, error may not be assigned to any defect in those rulings to the extent that an aggrieved party did not file a timely objection. Fed. R. Civ. P. 72(a) ("Within 10 days after being served

1 with a copy of the magistrate judge's order, a party may serve and file objections to the
2 order; a party may not thereafter assign as error a defect in the magistrate judge's order to
3 which objection was not timely made."). The absence of a timely objection precludes
4 later assignment of error in this court or in any higher court of the non-dispositive rulings
5 of a magistrate judge. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir.
6 1996); *Philipps v. GMC*, 289 F.3d 1117, 1120-21 (9th Cir. 2002).

IT IS THEREFORE ORDERED that the Report and Recommendation of the Magistrate Judge (Doc. # 25) is accepted with respect to all those claims that it does address.

IT IS FURTHER ORDERED that the Report and Recommendation is rejected only to the extent it fails to make a recommendation on Petitioner's claim that Mr. Huls provided ineffective assistance by failing to inform Petitioner of the potential sentence he faced at trial if he rejected the plea offer. This case is referred again to the Magistrate Judge for a further report and recommendation on the omitted issue.

This is not a final or appealable order. No final and appealable order will be entered until this court receives and acts upon the further report and recommendation.

DATED this 17th day of December 2007.

_____
Neil V. Wake
United States District Judge